# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

CALVIN EUGENE JACKSON,
ADC #134338                                                    PETITIONER

v.                        No. 5:14-cv-388-DPM

WENDY KELLEY, Director,
Arkansas Department of Correction                              RESPONDENT

## ORDER

**1.** On *de novo* review, the Court adopts as modified the recommendation on the merits of Jackson's ineffective assistance claims, № 39 at 7, and overrules Jackson's objections, № 42 & 43. The objections try to raise claims not included in Jackson's petition or amended petition. № 42 at 3–6; № 43 at 3–6. To the extent Jackson's objections are also a motion to amend his petition, that motion is denied as untimely. This case has progressed too far to add new claims at this late stage. *Cf. Williams v. Delo*, 82 F.3d 781, 784 (8th Cir. 1996).

Cutting to the merits, the Court concludes that Jackson's claims fail for lack of prejudice. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (*per curiam*). Because the Court resolves the petition on the merits — and because Jackson's return to state court in 2015

muddied the procedural waters—the Court declines the *Martinez/Trevino* portion of the recommendation as moot. № *39 at 6–7*.

**2.** Jackson pleaded guilty. To show prejudice, he must therefore show a reasonable probability that, but for his lawyer's alleged errors, he would have pleaded not guilty and insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985). As the *Hill* Court explained, assessing prejudice will often involve predicting whether a different course of action would have changed counsel's advice about the plea; and that will turn on predicting whether the alternate course would have changed the outcome of a trial. *Ibid.* "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill*, 474 U.S. at 59–60.

**3.** The Court construes the amended petition liberally. Jackson says that his lawyer was ineffective in three ways: (1) counsel let him plead guilty when the purposeful element of first degree murder wasn't met; (2) similarly, counsel let Jackson plead guilty even though it wasn't Jackson's intent to kill the victim; and (3) counsel didn't pursue a defense or lesser charge based on

extreme emotional disturbance. *№ 32 at 2–5.* In light of the record and the *Hill* standard, though, Jackson can't clear the prejudice bar.

Jackson's claims are based on his statements that he didn't intend to kill Mr. Jeffrey. When the trial court expressed concern about Jackson's statements, his lawyer explained that the victim's associates had assaulted someone in Jackson's apartment complex. Jackson encountered them a couple of hours later. Counsel explained that, though Jackson thought the victim had brass knuckles, none were found and four or five witnesses would likely testify that there were none. Counsel said he'd advised Jackson that these witnesses would testify that "Jackson was just angry in dealing with this most recent assault. He was angry about the circumstances in which these people had caused the fear and the harm that they had caused in his apartment complex where he lived and that out of anger he had approached one of them and simply pulled a weapon and began shooting[.]" *№ 9-4 at 16–17.*

When asked if he agreed with his lawyer's explanation, Jackson said, "they didn't find an actual weapon that I [saw in the victim's] hand, but I agree with everything he said." *№ 9-4 at 17.* At other points, Jackson stated that he "under[stood] the law now" and admitted that he "could have

avoided [the shooting]" and "could have walked away and none of this would have happened . . . ." № 9-4 at 13–14.

The law's definition of "purpose" and a layman's understanding of intention and emotional disturbance are different. But the plea colloquy shows that Jackson's lawyer explained those differences to Jackson before the plea. And in light of Arkansas precedent and all the material circumstances, Jackson's plea appears to have been a wise one. *E.g., Williamson v. State*, 2013 Ark. 347, at 5–6; *Kail v. State*, 341 Ark. 89, 94, 14 S.W.3d 878, 880–81 (2000). Further, Jackson received substantial concessions in exchange for his guilty plea: the State *nolle prossed* a felon-in-possession charge and withdrew four sentencing enhancements. № 9-4 at 5, 7. The benefits that Jackson received in exchange for his guilty plea cast doubt on his claim that he wouldn't have pleaded guilty but for counsel's alleged errors.

Jackson is right that the plea colloquy shows some equivocation. But it also shows a reasoned choice based on an understanding of the options and the possible outcomes. It appears Jackson weighed his options and took what he thought was the best way out of a bad situation: a plea to first degree murder with a known sentence (228 months' imprisonment, with an

additional 120 months suspended) instead of a trial and a possible life sentence. Jackson has regrets now. But he hasn't shown a reasonable probability that, had his lawyer pursued a different path, it would have changed his lawyer's advice about the plea, Jackson's decision to plead, or the ultimate result. Jackson's claims therefore fail for lack of prejudice. *Hill*, 474 U.S. at 58–60.

* * *

Recommendation, № 39, partly adopted as modified and partly declined as moot. Objections, № 42 & 43, overruled. Jackson's amended petition will be dismissed with prejudice. No certificate of appealability will issue. 28 U.S.C. § 2253(c)(1)–(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

So Ordered.

*D.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

26 May 2017